Alford Lee THOMAS and Carol Thomas,
as Guardians of the Person Estate
of Matthew Thomas, Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Defendant.

Civ. A. No. J91–0244(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

June 9, 1992.

Frank D. Edens, Sr., Adams & Edens, Brandon, Miss., for plaintiffs.

Phillip W. Gaines, Steen, Reynolds, Dalehite & Currie, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant State Farm Mutual Automobile Insurance Company (State Farm) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs Alford Lee Thomas and Carol Thomas, as guardians of the Estate of Matthew Thomas, have responded to the motion and have moved for partial summary judgment on count 1 of their complaint. The court has considered the memoranda of authorities together with attachments submitted by the parties in connection with the motion, and is of the opinion that defendant's motion for summary judgment should be granted and plaintiffs' motion for partial summary judgment denied.

On August 16, 1990, Matthew Thomas, the minor son of Alford Lee and Carol Thomas, was injured in a two-car collision while a passenger in a 1965 Ford Falcon owned and operated by his aunt, Alma Joiner. It appears to be undisputed that the accident was caused by the negligence of Alma Joiner, who died in or as a result of the accident. It further appears undisputed that Matthew Thomas has incurred medical bills in excess of $12,000 due to the injuries he sustained in the collision, and that he is expected to incur additional future medical expenses of at least $10,000.

The Joiner vehicle involved in the accident was insured under a policy of automobile insurance issued by State Farm to Henry and Alma Joiner which provided $10,000 per person liability coverage limits and $10,000 per person uninsured motorist coverage limits. By virtue of his being an occupant of the Ford Falcon (the host vehicle), Matthew Thomas was an insured under the uninsured motorist coverage of the Joiner Falcon policy which defines an "insured" as:

(1) The named insured and while residents of the same household, his spouse and the relatives of either;

(2) Any other person while occupying an insured motor vehicle; and

(3) Any person with respect to damages he is entitled to recover because of bodily injury to which this coverage applies sustained by an insured under (1) or (2) above.

Additionally, Matthew Thomas' father, Alford L. Thomas, in whose household Matthew resided, had in effect two State Farm policies at the time of the accident, one on a 1981 Ford pickup and another on a 1981 Pontiac, each of which provided uninsured motorist coverage limits of $10,000 per person, as well as $1000 in medical payments coverage. As a resident of his father's household, Matthew Thomas was insured under the two State Farm policies issued to his father, both of which defined "insured" in the same terms as above. State Farm stacked the coverage on the Ford Falcon with the coverage under the Alford Lee Thomas policies, which resulted in aggregate uninsured motorist coverage limits applicable to Matthew Thomas for the accident in the amount of $30,000. Comparing those limits to the liability limit of $10,000 on the host vehicle, State Farm determined that the host vehicle was uninsured, or underinsured,[1] in accordance with the terms of Mississippi's Uninsured Motorist Act.[2] Then, offsetting the $10,000 paid as liability coverage on behalf of Alma Joiner's estate,[3] State Farm paid $20,000 of uninsured motorist proceeds to Matthew Thomas.[4]

Plaintiff brought this action seeking to recover additional uninsured motorist benefits which he claims are due him under a separate policy of automobile insurance issued by State Farm to the Joiners and in effect at the time of the accident. That policy was issued to the Joiners on another vehicle which they owned, a 1976 Buick, and provided uninsured motorist coverage limits of $10,000 per person and $100,000 liability limits. Plaintiff alleges in count 1 of his complaint that he is entitled to stack, or aggregate, the $10,000 uninsured motorist coverage under that policy. State Farm, on the other hand, insists by its present motion that Matthew Thomas is not entitled to stack the uninsured motorist coverage under the Jordan Buick policy to recover benefits since he is not an insured under that policy. That is, according to State Farm, he does not qualify as an insured under the uninsured motorist coverage of the policy upon which his claim is made, the Jordan Buick policy, and thus cannot establish a prerequisite to recovery under that policy.

■ The question as presented by State Farm's motion is whether a guest passenger who is injured while an occupant of an underinsured motor vehicle may recover from uninsured motorist insurance carried by the named insured on another vehicle not involved in that accident where the insurance on the other vehicle is provided under a separate insurance policy. Because, contrary to plaintiff's urging, this is a question not heretofore addressed by the Mississippi Supreme Court, this court is

---

1. The method by which State Farm resolved that the Jordan Ford was "underinsured" was determined by the Mississippi Supreme Court to be the proper methodology in *Wickline v. United States Fidelity and Guaranty Co.,* 530 So.2d 708 (Miss.1988). There, the court explained that for the purpose of qualifying a host vehicle as underinsured, a guest passenger is permitted to stack his own uninsured motorist coverage with the uninsured motorist coverage on the host vehicle. Then, the guest passenger's own uninsured motorist coverage, together with the uninsured motorist coverage on the host vehicle, is compared to the liability insurance on the host vehicle to ascertain whether the applicable liability coverage is less than the uninsured motorist coverage. If so, the vehicle is underinsured. *See also Thiac v. State Farm Mutual Auto. Ins. Co.,* 569 So.2d 1217 (Miss.1990) (providing same explanation).

2. Miss.Code Ann. § 83–11–103 defines the term "uninsured motor vehicle" to include "[a]n insured motor vehicle, when the liability insurer of such vehicle has provided limits of bodily injury for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage."

3. Matthew Thomas, with the approval of the Chancery Court of Rankin County, Mississippi, settled his claim against the Estate of Alma Joiner in exchange for the payment of the $10,000 in insurance proceeds under the State Farm policy on the Joiner Ford.

4. State Farm also paid on behalf of Matthew Thomas $2000 under the medical payments coverage of his father's policies.

*Erie* -bound to predict the course that court would follow if presented with the question. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In venturing its *Erie* -guess, this court uses as its guide the principles of uninsured motorist law espoused by the state supreme court, as well as lower state court decisions addressing the issue presented. *See Jackson v. Johns–Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir.), *cert. denied*, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986). The court concludes that while the Mississippi Supreme Court has adopted an expansive view of the propriety of stacking uninsured motorist coverage to permit the maximum possible recovery by innocent injured motorists, it would not permit the recovery of uninsured motorist benefits provided by a policy under which the injured claimant is not an insured.

Mississippi's Uninsured Motorist Act provides, at Miss.Code Ann. § 83–11–101 (1972):

> No automobile or liability insurance policy or contract shall be issued or delivered after January 1, 1967, unless it contains an endorsement or provisions undertaking to pay *the insured* all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law, as amended under provisions approved by the commissioner of insurance. . . . (emphasis supplied).

The Act defines the term "insured" for the purpose of uninsured motorist coverage as:

> the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies, and *a guest in such motor vehicle to which the policy applies*, or the personal representative of any of the above.

Miss.Code Ann. § 83–11–103(b) (emphasis supplied). The Mississippi Supreme Court has recognized that this definition of "insured" establishes two categories of insureds, those of the first class, or class one insureds, which includes "the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise," and those of the second class, class two or "occupancy" insureds, which includes permissive users of and guests in the motor vehicle "to which the policy applies." *See Brown v. Maryland Casualty Co.*, 521 So.2d 854 (Miss.1987) (recognizing two classes of insureds); *Curry v. Travelers Indemnity Co.*, 728 F.Supp. 1299, 1300–01 (S.D.Miss. 1989).

The supreme court has established that class one insureds who are injured at the hands of an uninsured motorist are entitled to aggregate all of the uninsured motorist coverage for which a premium has been paid, reasoning that an insured who has paid separate premiums to obtain uninsured motorist coverage should receive the full extent of the coverage for which premiums are paid, if his damages reach or exceed the limits of such coverage. *See Southern Farm Bureau Casualty Ins. Co. v. Roberts*, 323 So.2d 536 (Miss.1975) (policyholder who paid separate premium for each policy should "receive what he paid for on each policy, up to the full amount of [the] damages.") (quoting *Van Tassel v. Horace Mann Mut. Ins. Co.*, 296 Minn. 181, 207 N.W.2d 348, 351–52 (1973)); *Hartford Accident & Indem. Co. v. Bridges*, 350 So.2d 1379, 1380 (Miss.1977) ("uninsured motorists coverage contained in one policy of insurance insuring three automobiles for which a separate premium was charged and paid on each automobile [could] be aggregated or stacked to cover the damage suffered by an insured."); *Pearthree v. Hartford Accident & Indem. Co.*, 373 So.2d 267 (Miss.1979) (ambiguous limitation clause did not operate to prevent the aggregation of uninsured motorist coverages for the benefit of the named insured where separate premiums were paid for uninsured motorist coverage on each of

two automobiles covered by his policy); *Government Employees Ins. Co. v. Brown,* 446 So.2d 1002, 1006 (Miss.1984) (stacking of multiple vehicles coverages so as to compensate named insured would be permitted; "[a]ny language attempting to limit an insurer's liability must fail when it deprives the insured of benefits for which a premium was paid."); *see also Szumigala v. Nationwide Mutual Ins. Co.,* 853 F.2d 274, 278 n. 3, 279 (5th Cir.1988) (insured is allowed to stack policy's uninsured motorist coverages for which the insured has paid separate premiums, notwithstanding an antistacking clause unambiguously to the contrary); *Tucker v. Aetna Casualty & Sur. Co.,* 609 F.Supp. 1574 (S.D.Miss. 1986), *rev'd on other grounds,* 801 F.2d 728 (5th Cir.1986) (as a result of having purchased separate uninsured motorist coverage on each of two vehicles and having paid separate premiums for uninsured motorist coverage on each of the two vehicles, named insureds were entitled to stack or combine the uninsured motorist coverage); *Ball v. United States Fidelity & Guaranty Co.,* 696 F.Supp. 1117 (N.D.Miss.1988) (Mississippi Supreme Court has clearly established *per se* rule that payment of separate premiums for uninsured coverage on multiple vehicles in insurance policy entitles first class insured to stack uninsured motorist coverage).

The rationale for permitting the stacking of uninsured motorist coverages has been extended by the Mississippi Supreme Court to permit similar recovery by class two insureds, i.e., occupants and permissive users of the insured vehicle. Each of the court's decisions concerning the ability of class two insureds to stack, however, has proceeded from an initial determination that the injured claimant was, in fact, an insured under the policy in dispute. For example, in *Brown v. Maryland Casualty Co.,* 521 So.2d 854 (Miss.1987), the issue was whether a class two occupancy insured was entitled to stack the uninsured motorist coverages held by the named insured under a single policy covering two vehicles. *Id.* at 855. The supreme court opined that "the liberal coverage extended to all circumstances when a member of the first class … is injured by an uninsured motorist" should likewise be extended to class two insureds, *id.* at 856, reasoning that the injured plaintiff, a permissive user,

> was an insured as defined by the policy. Under these facts there is no reason to distinguish between persons insured and policyholders who have actually paid premiums. The justification for stacking lies not in who has paid for the extra protection, but rather that the protection has been purchased. *The benefits flow to all persons insured.*

*Id.* (quoting *Sayers v. Safeco Ins. Co.,* 192 Mont. 336, 628 P.2d 659, 662 (1981)) (emphasis supplied). This holding was echoed in *Wickline v. United States Fidelity and Guaranty Co.,* 530 So.2d 708 (Miss.1988). Stacy Wickline was fatally injured while a passenger in an automobile operated by Mills Carter, III, and owned by Mills Carter, Jr. Carter had purchased a single automobile insurance policy from USF & G which covered four separate vehicles, including the vehicle involved in the accident, for which four separate premiums were charged. The wrongful death beneficiaries of Stacy Wickline sought to recover uninsured motorist benefits under the Carter policy, contending they were entitled to receive the per person uninsured motorist coverage limits on each of the four vehicles insured by the policy. The court phrased the issue as follows: "WERE STACY WICKLINE AND PLAINTIFFS 'INSUREDS' UNDER THE UNINSURED MOTORIST COVERAGE OF *EACH* OF THE FOUR (4) CARTER VEHICLES COVERED BY THE U.S.F. & G. POLICY SO AS TO ENTITLE THEM TO 'STACK' THE UNINSURED MOTORIST COVERAGE OF EACH VEHICLE?" *Id.* at 713. The court answered the question in the affirmative, explaining that in determining the propriety of stacking,

> the question is purely and simply one of reading the statute as written. First, who is an "insured"? There is no natural law definition of insured in uninsured motorist law, nor are we concerned with what the law ought to be. *The judicial eye reads only the positive*

*command of the statute.* In relevant part, § 83–11–103(b) defines "insured" as "a guest in such motor vehicle to which the policy applies, or the personal representative of [such guest]."

*Id.* at 714 (emphasis supplied). Because [t]he U.S.F. & G. policy in issue applied to the 1979 Thunderbird owned by Mills Carter, Jr.[,] [and] Stacy Wickline was a passenger in that motor vehicle, [and] Marie Wickline and Sharlotte Wickline Starc are her personal representatives[,] [they] are thus "insureds" within § 83–11–103(b).

Stacking is firmly imbedded in our uninsured motorist law. The sort of stacking here sought, i.e., stacking multiple coverages within a single policy, has been mandated in *Brown, Pearthree* and *Hartford Accident & Indemnity Co. v. Bridges,* 350 So.2d 1379. *See also St. Arnaud v. Allstate Insurance Co.,* 501 F.Supp. 192 (S.D.Miss.1980). As with other types of stacking, the rationale offered is that multiple premiums are paid and multiple (stacked) coverages should be available. However, what is important is that stacking has become a positive gloss upon our Uninsured Motorist Act.

No one would question stacking were Mills Carter, Jr., the named insured, the plaintiff.... Are Stacy Wickline's personal representatives insureds of any less status than Carter? No, not if the statutory definition be respected.... Mills Carter, Jr. paid the premiums for the benefit of all insureds, including the statutory UM third party beneficiary Stacy Wickline.

*Id. See also Harris v. Magee,* 573 So.2d 646, 652 (Miss.1990) (recognizing general rule permitting all classes of statutory insureds to stack uninsured motorist coverage and permitting stacking under commercial fleet policy); *Curry v. Travelers Indemnity Co.,* 728 F.Supp. 1299, 1302 (S.D.Miss.1989) (Mississippi rejects rationale of other jurisdictions that payment of additional premiums applies only to first class insureds; second class insureds may stack).

In *Thiac v. State Farm Mutual Automobile Insurance,* 569 So.2d 1217 (Miss. 1990), a question presented was "whether a guest passenger while occupying a vehicle involved in an accident, can also benefit from uninsured motorist insurance carried by the 'named insured' on another vehicle not involved in the accident." *Id.* at 1218. In keeping with the rule set forth in *Wickline,* the *Thiac* court held that the coverages under two separate policies issued to the named insured, one of which provided coverage for the host vehicle, could not be stacked for the purpose of determining whether the host vehicle was underinsured, emphasizing that "for the purpose of establishing whether an insured host vehicle is, in fact, underinsured, *we look no further than the guest passenger's own coverage and the coverage on the host vehicle.*" 569 So.2d at 1221 (emphasis in original). But because there were equal amounts of liability coverage and uninsured motorist coverage on the host vehicle, and the guest passenger had no coverage of her own, the host vehicle was not underinsured,[5] and the court did not address the issue here presented of whether the injured claimant could have received the benefit of the coverage provided the named insured under a separate policy insuring the noninvolved vehicle.[6]

---

**5.** The guest passenger, who had no insurance coverage of her own, contended that she was entitled to stack $25,000 in uninsured motorist coverage available under the State Farm policy insuring the host vehicle with an additional $10,000 in uninsured motorist coverage on another vehicle owned by the driver of the host vehicle but insured under a separate State Farm policy to render the host vehicle, on which there was $25,000 liability limits, underinsured.

**6.** Matthew Thomas cites *Thiac* and *Wickline* in support of his contention that the Mississippi

Supreme Court has permitted stacking in virtually identical circumstances to those here. It is easily seen that *Wickline* is distinguishable, and that the court in *Thiac* never reached the issue here presented. In *Thiac,* the court did observe that the fact that the coverage secured by the driver of the host vehicle on another vehicle was provided under a separate insurance policy was not the basis for its refusal to allow the stacking of that policy for determining whether the host vehicle was underinsured, stating:

The court in *Wickline* indicated that Mississippi's Uninsured Motorist Act does not distinguish between the uninsured motorist coverage available to persons who qualify as "insureds" under the terms of the Act, regardless of whether the person seeking coverage is denominated a "class one" or a "class two" insured. Thus, there is no distinction to be made in the coverage afforded *once it is determined that the class two claimant is an insured* in accordance with the command of the uninsured motorist statute. It follows that the decisive issue here, as in *Wickline* and in every other case decided by the Mississippi Supreme Court involving uninsured motorist coverage,[7] is whether Matthew Thomas is an "insured" as to the policy under which he is claiming benefits, the Jordan Buick policy. Indeed, applying the *Wickline* court's view of the issue, the question presented is simply, "WAS MATTHEW THOMAS [AN] 'INSURED' UNDER THE UNINSURED MOTORIST COVERAGE OF *EACH* OF THE [TWO (2) ] [JORDAN] VEHICLES COVERED BY THE [STATE FARM] POLIC[IES] SO AS TO ENTITLE [HIM] TO 'STACK' THE UNINSURED MOTORIST COVERAGE OF EACH VEHICLE?" *Wickline*, 530 So.2d at 713. A "pure and simple" reading of the uninsured motorist statute dictates the conclusion that he is not. The uninsured motorist law by its terms makes uninsured motorist coverage available to "a guest in [the] motor vehicle *to which the policy applies.*" (emphasis supplied). Under this definition, a person, by virtue of his status as a guest passenger, is an insured only with respect to the policy applicable to the motor vehicle in which the guest is a passenger. It can hardly be disputed that Thomas was not an "insured" under the terms and definitions of the Jordan Buick policy, for he was not the named insured, a resident of the named insured's household or an occupant of the vehicle when the accident occurred. It follows, therefore, that Thomas is thus not entitled to stack the coverage under the Buick policy.[8]

The court's conclusion in this regard is buttressed by the fact that lower Mississippi courts which have addressed the issue here presented have concluded that the injured claimant is not entitled to recover uninsured motorist benefits under a policy as to which he is not an "insured" according to the definition of that term in the uninsured motorist statute or the policy at issue. *See Johnson v. State Farm Mutual Auto. Ins. Co.*, No. 91–68–2, slip op. at 4 (Circuit Court Hinds County March 30, 1992) ("Since Plaintiff is not an 'insured' under the Poindexter Ford policy, he is not entitled to 'stack' any uninsured motorist coverage proceeds of that policy."); *Hartsfield v. State Farm Mutual Auto. Ins. Co.*, No. 38,380 (Circuit Court Hinds County January 25, 1991) (granting summary judgment in favor of insurer without opinion); *Rone v. Fidelity & Guaranty Ins. Underwriters*, No. 17,497, slip op. at 3 (Circuit Court Copiah County July 24, 1990) ("Due to the fact that the claimant does not meet the definition of being an 'insured' in the policies covering the 1984 Oldsmobile and

---

It is the legislative intent behind § 83–11–103(c)(iii), *not* the fact that the Datsun was insured by a separate State Farm policy, which dictates that Thiac should not be allowed to stack Ellzey's Datsun policy to qualify the Porsche as underinsured.

569 So.2d at 1221. As this court reads that opinion, however, the remark by the *Thiac* court, when considered in context, was intended merely to demonstrate that whether there were separate policies or a single policy covering both vehicles made no difference to its decision since even had there been only one policy, stacking would not have been permitted in that circumstance.

**7.** Notably, in each of the cases involving stacking by class one insureds, there has been no

question but that the claimant in question was, in fact, an "insured" in accordance with the definition of that term in the insurance policy under consideration and the Uninsured Motorist Act.

**8.** It is clear from both *Wickline* and *Thiac* that had State Farm issued a single policy to the Jordans providing coverage for both the Ford Falcon and the Buick, then stacking of the uninsured motorist coverages for those vehicles would be appropriate to arrive at the amount which Thomas is entitled to recover in this instance. But that is not what has occurred. Here, State Farm issued a separate policy for each vehicle, and Thomas was an "insured" under only one of those policies.

the 1981 Chevrolet ½ ton pickup truck, no uninsured motorist coverage was in effect thereunder.").[9]

The court is, of course, cognizant of the public policy considerations which permeate the area of Mississippi law relating to uninsured motorist insurance coverage. But this court cannot say that public policy requires that coverage be provided to one who is clearly not an insured with respect to the policy under which he seeks to recover benefits.

Based on the foregoing, the court concludes that State Farm's motion for summary judgment should be granted insofar as it seeks an adjudication that Matthew Thomas is not entitled to the additional $10,000 uninsured motorist coverage limits provided under the Jordan Buick policy.

■ In addition to their claim for the $10,000 uninsured motorist benefits provided by the Joiner Buick policy, plaintiffs contend in count 2 of their complaint that the State Farm agent responsible for "selecting" automobile insurance coverage for the Joiners negligently failed to advise and provide guidance to Alma Joiner concerning her insurance "needs," which resulted in the issuance of a policy that provided inadequate coverage. They further urge that State Farm negligently and/or intentionally failed to adequately train its agents in the area of determining adequate policy limits and so advising its insureds. In other words, plaintiffs maintain that State Farm and its agents have a duty to recommend liability and uninsured motorist policy limits to applicants.[10] No such cause of action exists in this state and there is absolutely no basis for predicting that such a cause of action would be recognized by the Mississippi Supreme Court. Defendant's motion as it pertains to count 2 should be granted.

Finally, plaintiffs sought in their complaint, with no explanation of the putative basis therefore, five million dollars in punitive damages, presumably for some unidentified "bad faith" by State Farm. That there is no basis for the recovery of punitive damages in this case is manifest. Defendant's motion for summary judgment on the demand for punitive damages should be granted.[11]

It is, therefore, ordered that defendant's motion for summary judgment is granted. It is further ordered that plaintiffs' motion for partial summary judgment is denied.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

**9.** Other courts faced with this issue have reached the same conclusion. *See, e.g., Martin v. Milwaukee Mut. Ins. Co.,* 146 Wis.2d 759, 433 N.W.2d 1 (1988); *William v. State Farm Mut. Auto. Ins. Co.,* 737 F.2d 741 (8th Cir.1984) (applying Louisiana law) (plaintiff could not stack because she was not insured under any policy except the one covering the vehicle she was occupying at the time of the accident); *Babcock v. Adkins,* 695 P.2d 1340 (Okl.1984) (occupants of insured motor vehicle involved in accident, who have uninsured motorist coverage solely because of status as passengers, may not stack uninsured motorist coverage under separate policies of insurance purchased by owner of involved vehicle for noninvolved vehicle unless those passengers also qualify as insureds under those separate policies); *Doerner v. State Farm Mut. Auto. Ins. Co.,* 337 N.W.2d 394 (Minn.1983) (same).

**10.** While direct actions are not permitted under Mississippi law, *see Westmoreland v. Raper,* 511 So.2d 884 (Miss.1987), plaintiffs claim to have secured an assignment of any claims which Alma Joiner, State Farm's insured, may have against the carrier in connection with the policies it issued to the Joiners. The court assumes solely for the sake of argument that there was indeed a valid assignment of any such claims.

**11.** While the assertion of a patently baseless demand for punitive damages is objectionable, though commonplace and far too familiar to this court, the court will not *in this instance* accede to defendant's request that it recover its attorney's fees for defending that claim.