# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-CA-00217-SCT

*MISTY JO BOX*

*v.*

*STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 1-29-93 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WAYNE E. FERRELL, JR. |
| ATTORNEYS FOR APPELLEE: | PHILLIP W. GAINES |
| | WILLIAM H. CREEL, JR. |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 3/13/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/7/97 |

**BEFORE SULLIVAN, P.J., ROBERTS AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. This action was initiated upon the filing of a complaint by Misty Jo Box (Box) a minor, through her natural parents, Donnie and Merita Bane, in the Circuit Court of the First Judicial District of Hinds County on November 15, 1989. Box was a passenger in a car owned and driven by Barry R. Williams. Barry R. Williams and his family were covered by three separate insurance policies with State Farm Mutual Automobile Insurance Company (State Farm). Box sought to stack uninsured motorist limits on separate policies covering other vehicles not involved in the accident, but owned by the Williams family. The complaint named as one of the defendants State Farm. Following a hearing on the matter, the circuit court entered summary judgment in favor of State Farm on January 29, 1993, without benefit of a written opinion. From the entry of this final judgment, Box appeals to this Court. She assigns as error the following:

> *1. Whether the trial court erred in granting summary judgment in favor of State Farm*
> *where genuine issues of material fact exist as to whether State Farm administered and*
> *managed the separate policies issued to the Williams family as one policy covering multiple*

*vehicles such that Box should have been allowed to stack the coverages on all vehicles?*

*2. Whether this Court should reverse State Farm Mut. Auto. Ins. Co. v. Davis, 613 So. 2d 1179 (Miss. 1992), or, at least, limit that case to its facts?*

¶2. This Court finds that no genuine issues of material fact exist; that the law is clear that stacking is not permissible in this case; and we therefore affirm the decision of the lower court.

## FACTS

¶3. On October 12, 1986, Box was a passenger in a 1985 Plymouth vehicle driven by Williams which was involved in a collision with a third vehicle driven by Cora Baker (Baker). The proximate cause of the accident was the negligence of Baker. As a result of the accident, Box sustained severe injuries and damages which she alleges exceed at least $200,000.

¶4. At the time of the accident, Baker was covered by an automobile insurance policy under which Box was paid the policy limits for liability coverage of $10,000. Box was covered under her own policy of insurance at the time of the accident through which she received uninsured motorist (UM) benefits in the total amount of $30,000. Also, at the time of the incident, Williams and his family were covered by three insurance policies through State Farm with identical coverages. The first policy was on the car involved in the collision. The other two policies with State Farm were: (1) policy number 174-5650-DO1-24 insuring a 1980 Oldsmobile (Williams' Oldsmobile policy); and (2) policy number 174-5651-DO1-24 insuring a 1979 Dodge one-half ton pickup (Williams' Dodge policy). Each carried uninsured motorist coverage with a per person limit of $100,000. State Farm has paid Box the total sum of $90,000 of uninsured motorist insurance benefits, but has refused to pay the remaining $200,000 of UM coverage alleged available to Box under her view of the principles of stacking. The sum of $90,000 represents the UM coverage on the vehicle involved in the accident in the amount of $100,000, less the $10,000 paid to Box by Baker's liability insurance carrier.

¶5. State Farm contends Box does not meet the definition of an insured under those policies for the following reasons: (1) the two Williams' vehicles listed on the separate policies were not involved in the accident in any way; (2) Box did not occupy those vehicles; and, (3) Box is not a relative of the Williams family and did not live in the Williams' household.

¶6. Through the course of discovery in this matter, Box established that, although State Farm issued separate policies of insurance to the Williams family, in many respects it treated those policies as one multiple-car policy. For instance, William E. Ligon (Ligon), an underwriting operations superintendent of State Farm, testified by deposition that multi-car discounts are applied to all of the policies purchased by a household. Thus, when a family insures multiple vehicles through separate policies from State Farm, a discount is applied to premiums of all policies the household purchases. Similarly, when asked about defensive driving discounts, Ligon testified that when an individual qualifies for the defensive driving discount, "it applies to all policies that have private passenger-type policies just like the multi-car discount."

¶7. It was also noted that when State Farm imposes a surcharge for a driving-under-the-influence (DUI) violation, State Farm assigns the surcharge to the highest rated vehicle in the household rather than the policy on the automobile in which the insured received the DUI citation. Thus, Box contends

that rather than treating one policy covering one vehicle as separate and distinct, it appears that State Farm "mixes" coverage on some portions of the single car policies.

## STANDARD OF REVIEW

¶8. Rule 56 of the Mississippi Rules of Civil Procedure allows summary judgment where there are no genuine issues of material fact such that the moving part is entitled to judgment as a matter of law. To prevent summary judgment, the nonmoving party must establish a genuine issue of material fact by means allowable under the Rule. *Lyle v. Mladinich*, 584 So. 2d 397, 398 (Miss. 1991).

¶9. This Court employs a *de novo* standard of review in reviewing a lower court's grant of summary judgment motion. *Mississippi Farm Bureau Casualty Ins. Co. v. Curtis*, 678 So. 2d 983 (Miss. 1996), *citing Spradlin v. State Farm Mutual Auto. Ins. Co.*, 650 So. 2d 1383, 1385 (Miss. 1985); *Daniels v. GNB, Inc.*, 629 So. 2d 595, 599 (Miss. 1993). Evidentiary matters are viewed in the light most favorable to the nonmoving party. *Palmer v. Biloxi Regional Medical Center, Inc.*, 564 So. 2d 1346, 1354 (Miss. 1990). If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed. *Brown v. Credit Center, Inc.*, 444 So. 2d 358, 362 (Miss. 1983).

## I.

**Whether the trial court erred in granting summary judgment to State Farm where genuine issues of material facts remain in dispute as to whether State Farm administers and manages separate insurance policies for multiple vehicles owned by a single family or household as one multiple-vehicle policy such that stacking should be permitted?**

¶10. Box contends that the trial court erred in granting summary judgment in favor of State Farm because there remain genuine issues of material fact in dispute as to whether State Farm treated the three policies issued to the Williamses' as one. She asserts that State Farm issued the policies separately solely to avoid stacking under Mississippi law. Further, she asserts that the trial court erroneously resolved this factual issue on its own in favor of State Farm.

¶11. Box submits that it has been often noted by this Court that uninsured motorist insurance was developed in order "to provide innocent injured motorists a means of recovery of all sums to which they are entitled from an uninsured motorist." *Wickline v. United States Fidelity and Guaranty Co.*, 530 So. 2d 709, 712 (Miss. 1988), *citing, Rampy v. State Farm Mut. Auto. Ins. Co.*, 278 So. 2d 428, 431-32 (Miss. 1973). In order to achieve this stated purpose, courts are advised to liberally construe the provisions of the Uninsured Motorist Act. *Wickline*, 537 So. 2d at 711; *Curry v. Travelers Indemnity Co.*, 728 F.Supp. 1299, 1300 (S.D. Miss. 1989).

¶12. Box contends that at least since this Court's decision in *Brown v. Maryland Casualty Co.*, 521 So. 2d 854 (Miss. 1987), it has been an accepted principle of uninsured motorist law that a Class 2 insured may stack the limits of UM coverage on the vehicle in which he or she was injured by multiplying the number of vehicles insured in the policy times the limits of UM coverage. *Id.* at 857. *See also Wickline*, 530 So. 2d at 715.

¶13. She points to the case of *Wickline* where this Court allowed an injured passenger to stack the

coverages on each of four vehicles covered under a multiple vehicle policy issued to the driver. *Id.* 530 So. 2d at 714-15. In so holding, this Court stated that "stacking is firmly embedded in our uninsured motorist law" and that "stacking has become a positive gloss upon our Uninsured Motorist Act." *Id.* 530 So. 2d at 714.

¶14. The *Wickline* Court further noted that stacking multiple coverages within a single policy had been mandated in *Hartford Accident & Indemnity Co. v. Bridges*, 350 So. 2d 1379 (Miss. 1977), and explained that the rationale behind this principle "is that multiple premiums are paid and multiple (stacked) coverages should be available." *Wickline*, 530 So. 2d at 714. The *Wickline* Court concluded that:

> [T]he operative provisions of the Mississippi Uninsured Motorist Act has been declared as a matter of positive law to provide that all classes [of] statutory insureds may recover of the UM insurer all amounts he or she may be entitled to recover as damages from the uninsured motorist, limited only by the limits of UM coverage multiplied by the number of vehicles insured in the policy.

530 So. 2d at 715.

¶15. Box also states this is similar to *Brown v. Maryland Casualty* where this Court held that a permissive user of the insured vehicle was entitled to stack the uninsured motorist coverage provided on the vehicle in question and coverage on another vehicle owned by the insured. *Brown*, 521 So. 2d at 857. In support of that holding, the Court explained that "[t]he justification for stacking lies not in who has paid for the extra protection, but rather that the protection has been purchased." *Id.* at 856, *quoting Sayers v. Safeco Ins. Co.*, 628 P.2d 659, 662 (Mont. 1981).

¶16. Following its decisions in *Wickline* and *Brown v. Maryland Casualty*, this Court held in *State Farm Mut. Auto. Ins. Co. v. Davis*, 613 So. 2d 1179 (Miss. 1992), that a passenger injured in an insured vehicle was not entitled to stack UM coverages under *separate* policies issued to the owners of the vehicle. In so holding, the *Davis* Court concluded that the passenger was not an "insured" under any of the policies issued to the vehicles' owners except as to the vehicle involved in the accident, distinguishing *Wickline*. *Davis*, 613 So. 2d at 1182.

¶17. Box seeks to distinguish the instant case from *Davis*. She asserts that she has adduced evidence which demonstrates that, but for the fact that they are assigned different policy numbers, the policies issued to the Williams family by State Farm were in reality one separate policy covering multiple vehicles. She asserts that State Farm treated these separate policies as one, as evidenced by the identical coverages provided thereunder; its practice of extending multi-car discounts on all policies purchased by a household; the across-the-board application of defensive driving discounts; and the manner in which State Farm applies a surcharge for a DUI violation to the highest rated vehicle in the household rather than to the policy covering the vehicle in which the violation was received. Given these established facts, Box suggests that the trial court erred in determining as a matter of law that the three policies in question were, in fact, separate policies such that her stacking of the coverages by an injured passenger was prohibited. She submits that this Court should look beyond the insurance company's own classification of its policies to the actual effect of the policies. This is not a new proposition. *Allstate Ins. Co. v. Ashley*, 795 F.Supp. 809 (S.D. Miss. 1992), *rev'd on other grounds*, 998 F.2d 300 (5th Cir. 1993).

¶18. This Court has clearly enunciated its stance on stacking UM coverage. We have repeatedly held "[i]n order to recover the UM benefits provided by an insurance policy, the claimant must first prove that he/she is an 'insured' under either the insurance policy and/or the UM statute." *Mississippi Farm Bureau Casualty Ins. Co. v. Curtis*, 678 So. 2d 983, 987-88 (Miss.1996); *quoting State Farm Mut. Auto. Ins. Co. v. Davis,* 613 So. 2d 1179, 1180 (*citing Gillespie v. Southern Farm Bureau Casualty Ins. Co.*, 343 So. 2d 467, 471 (Miss. 1977)); *see also Johnson v. Preferred Risk Auto. Ins. Co.,* 659 So. 2d 866, 871 (Miss. 199).

¶19. It is a fundamental requirement that before a person is entitled to recover uninsured motorist coverage, that person must first prove that she is an insured under the insurance policy or the Uninsured Motorist Statute. *Johnson v. Preferred Risk Auto. Ins. Co.*, 659 So. 2d 866, 871 (Miss. 1995). It is undisputed in this case that Box fails to meet the definition of an insured under both the policy language and the Uninsured Motorist Act. The State Farm policy language defines "insured" as:

1. You;

2. Your Spouse;

3. Your Relatives; and

4. Any other person occupying your car, a temporary substitute car, a newly acquired car . . . .

In the policy, "You" is defined as the named insured listed on the declarations page of the policy, i.e., Hubert Williams. "Your car" is defined under the State Farm policies as "the car or the vehicle described on the declarations page."

¶20. Box was not occupying the cars described on the declarations pages of the Williamses' other policies. She also is not the named insured under the policies, nor is she the spouse or resident relative of the named insured. Therefore, under the clear policy terms, Box does not meet the definition of an "insured." This identical policy language was considered by this Court, in this same context, in *State Farm v. Davis*, 613 So. 2d 1179 (Miss. 1992).

¶21. The Mississippi Legislature in the Uninsured Motorist Act did not choose to define "insured" so broadly as to potentially include persons situated the same as Box is in this case. Miss. Code Ann. § 83-11-103(b) (1972) defines "insured" as: "(1) The named insured, and if a resident of the same household, (2) the spouse of the named insured and relatives of either, who uses, with consent expressed or implied of the named insured, the motor vehicle to which the policy applies, *and a guest in such motor vehicle to which the policy applies. . . .*" (emphasis added). Applying this definition requires a finding that Box does not qualify under the Uninsured Motorist Act as an insured under the two additional State Farm policies.

¶22. The trial court correctly granted summary judgment in favor of State Farm as there were no genuine issues of material fact. State Farm issued separate policies to the Williams family, each covering a different vehicle. Box, as a passenger in one of the Williamses' cars, and not a member of the Williams household nor a named insured, did not meet the definition of an insured under the State Farm policies issued to the Williams family covering the vehicles not involved in the accident in

question. As such, Box was not entitled to uninsured motorist coverage and summary judgment was proper. *Mississippi Farm Bureau Casualty Ins. Co. v. Curtis*, 678 So. 2d 983, 988 (Miss. 1996); *Meadows v. Mississippi Farm Bureau Ins. Co.*, 634 So. 2d 108, 111 (Miss. 1994).

¶23. In order to have a valid claim for uninsured motorist coverage, the claimant must qualify as an insured under the policy or under the statute. In this case, there is no dispute that under both the legislative and policy provisions, Box does not meet the definition of an insured for the purposes of recovering uninsured motorist benefits. Because she fails to satisfy these requirements, this Court must affirm the lower court's grant of summary judgment and deny stacking of the other coverages at issue. *Curtis*, at 987-89.

**II.**

> **Whether this Court should reverse *State Farm Mut. Auto. Ins. Co. v. Davis*, 613 So. 2d 1179 (Miss. 1992), or, at least, limit that case to its facts?**

¶24. As to this issue, this Court once again reiterates that the decision in *State Farm Mut. Auto. Ins. Co. v. Davis* remains sound and solid law, and moreover that it is embraced by many of our more recent decisions. *Mississippi Farm Bureau Casualty Ins. Co. v. Curtis*, 678 So. 2d 983 (Miss. 1996); *Johnson v. Preferred Risk Auto. Ins. Co.*, 659 So. 2d 866 (Miss. 1995); *Meadows v. Mississippi Farm Bureau Ins. Co.*, 634 So. 2d 108 (Miss. 1994); *Miller v. Allstate Ins. Co.*, 631 So. 2d 789 (Miss. 1994).

**CONCLUSION**

¶25. Under both Mississippi law and the policy in question, Misty Jo Box is not entitled to uninsured motorist coverage under the separate policies issued to the Williams family which were not involved in the accident in question. She is entitled only to the uninsured motorist coverage provided in the policy insuring the vehicle involved in the accident and in which she was a passenger. The judgment of the trial court is hereby affirmed.

¶26. **AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS AND ROBERTS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. SMITH, J., NOT PARTICIPATING.**

McRAE, JUSTICE, DISSENTING:

¶27. I disagree with the majority's conclusion that Misty Jo Box was entitled to uninsured motorist benefits only to the extent of the coverage limits of the vehicle in which she was riding as a guest passenger. To the contrary, because UM coverage is a block of insurance purchased for a special purpose and because the UM statute makes no distinction between Class I and Class II insureds, she was entitled to aggregate the policy limits of coverage secured by the Williams family for their three vehicles. Accordingly, I dissent.

¶28. Uninsured motorist coverage is personal to insureds, providing coverage for people and not for

vehicles. *State Farm Mutual Automobile Insurance Co. v. Nester*, 459 So. 2d 787, 793 (Miss. 1984)(quoting Appleman, Insurance Law and Practice § 5080). The purpose of UM coverage is "to benefit the insured by making available compensation for his property damage, bodily injuries or death." *State Farm Mutual Automobile Insurance Co. v. Daughdrill*, 474 So. 2d 1048, 1051 (Miss. 1985). Thus, the premium paid for UM coverage, unlike that for liability or damage coverage, is not calculated on the basis of the basis of a vehicle's age or value but solely on the amount of coverage provided. It is a block or sum certain of coverage-- personal to the policy owner and other insureds who are injured at the hands of an uninsured motorist.

¶29. We construe the applicability of UM coverage from the perspective of the injured insured. *Nester*, 459 So. 2d at 790; *Harthcock v. State Farm Mutual Automobile Insurance Co.*, 248 So. 2d 456, 460 (Miss. 1971)("In uninsured motorist insurance the insured is the injured party."). As the majority correctly notes,"the claimant must first prove that he/she is an 'insured' under either the insurance policy and/or the UM policy." *State Farm Mutual Automobile Insurance Co. v. Davis*, 613 So. 2d 1179, 1180 (Miss. 1992) ; *Gillespie v. Southern Farm Bureau Casualty Insurance Co.,* 343 So. 2d 467, 471 (Miss. 1977). Pursuant to Miss. Code Ann. § 83-11-103(b), an insured under a UM policy includes "any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies, or the guest in such motor vehicle to which the policy applies." However, the statute does not use the terms Class I and Class II insureds, and makes no distinction, in terms of the UM protection afforded, amongst the various categories of insureds (e.g., named insured, resident of household, permissive user or guest passenger) defined in § 83-11-103(b).

¶30. Our case law, too, has recognized that for purposes of UM coverage, there is no distinction between Class I and Class II insureds. In *Cossitt v. Nationwide Mutual Insurance Co.*, 551 So. 2d 879 (Miss. 1989), we expressly rejected the notion of different treatment for Class I and Class II insureds, and determined that the injured parties, passengers on a church bus who were struck by an uninsured motorist while standing outside the bus, one of whom was an employee of the church, were entitled to aggregate the coverage that the church carried on its three buses, for which it paid separate premiums. In *Wickline v. United States Fidelity & Guaranty Co*., 530 So. 2d 708, 714-715 (Miss. 1988), we likewise found that all classes of insureds were entitled to aggregation of UM policies. Although Stacy Wickline was an insured under the single policy covering all four cars owned by the Carter family, she did not meet the definition of insured with respect to the three vehicles not involved in the accident. Nevertheless, the Wicklines were allowed to recover the aggregate of the UM policies covering the four vehicles owned by the Carters, even though their daughter was a guest passenger in only one of the cars. Moreover, in *Pearthree v. Hartford Accident & Indemnity Co.*, 373 So. 2d 267 (Miss. 1980), we held that the fact that separate insurance premiums were paid on the host driver's various vehicles did not limit a guest passenger's heir's ability to aggregate the coverage available under those policies.

¶31. As our decision in *Pearthree* indicates, we long have recognized that UM coverage provides a block of protection, regardless of whether the policies an insured seeks to aggregate or stack are paid for by one premium or by separate premiums. In *Nester*, which involved four separate policies on which four separate premiums had been paid, we affirmed the trial court's findings that the policies could be aggregated or stacked. Even State Farm conceded that each of the policies was applicable and enforceable. *Nester,* 459 So. 2d at 793. In *Government Employees Insurance Co. v. Brown*,

446 So. 2d 1002 (Miss. 1984), we reaffirmed the rule that "where an insured purchases more than one policy and pays the premium on more than one policy, that insured is entitled to collect on all such policies." *Nester*, 459 So. 2d at 793. We further explained in *Wickline* that:

> Stacking is firmly imbedded in our uninsured motorist law. The sort of stacking here sought, i.e., stacking multiple coverages within a single policy, has been mandated in ***Brown*** [***Brown v. Maryland Casualty Co***., 521 So. 2d 854 (Miss. 1987)], ***Pearthree*** [***Pearthree v. Hartford Accident & Indemnity Co.***, 373 So. 2d 267 (Miss. 1979)] and ***Hartford Accident & Indemnity Co. v. Bridges***, 350 So. 2d 1379 (Miss. 1977). *See also **St. Arnaud v. Allstate Insurance Co.***, 501 F. Supp. 192 (S.D. Miss. 1980). As with other types of stacking, the rationale offered is that multiple premiums are paid and multiple (stacked) coverages should be available. However, what is important is the fact that stacking has become a positive gloss upon our Uninsured Motorist Act.

*Wickline,* 530 So. 2d at 714.

¶32. Considering that UM insurance is a block of coverage based on the number of vehicles owned by the policyholder and that there is no basis for making a distinction between a Class I and Class II insured for purposes of UM coverage, Misty Jo Box is entitled to aggregate or stack the benefits payable under the UM policies covering the Williams' three vehicles. Accordingly, I dissent.